IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

INTERNATIONAL UNION,
UNITED AUTOMOBILE, AEROSPACE,
AND AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA, *et al.*,

                Plaintiffs        Case No. 3:14 CV 2112

   -vs-

                                    <u>MEMORANDUM OPINION</u>

TEXTRON, INC., *et al.,*

                Defendants.

KATZ, J.

## I. Introduction

Plaintiffs International Union, United Automobile, Aerospace & Agriculture Implement Workers of America ("UAW") and certain named individuals (collectively "Plaintiffs"), bring this action against Textron Inc. and Textron Master Retirement Plan (collectively "Defendants"), alleging they were wrongfully denied life insurance and reimbursement for premiums paid for Medicare Part B under their respective pension plans. (Doc. No. 1).

Defendants submit that Plaintiffs claims are barred by both res judicata and a settlement agreement previously entered into by the parties and approved by this Court. Defendants move to dismiss the Complaint in its entirety. (Doc. No. 7).

## II. Background

This case stems from the closings of two Textron plants in 1994 and 1995, in Lima and Fostoria, Ohio, respectively; and the series of collective bargaining agreements entered into that

covered the terms and conditions of those hourly employees represented by the UAW at these plants.

In 1999, a group of retirees brought suit in this Court against their former employer Textron, and the retirees' pension plans. *See UAW v. Textron* , No. 3:98-cv-7524-DAK, Second Am. Compl. (N.D. Ohio, entered Apr. 26, 1999) (Katz, J.) ("Prior Litigation").

Like the instant case, the Prior Litigation was a purported class action on behalf of certain retirees of Textron's Lima and Fostoria plants. The parties agree that the retirees from the Prior Litigation include each member of the purported class of named Plaintiffs in the case at bar. In the Prior Litigation, the plaintiff retirees claimed that they "me[t] the eligibility requirements for the Section 2(c) early retirement permanent layoff benefit" under the pension plan at issue.[1] This Section 2(c) benefit is commonly referred to as the "Mutual and Satisfactory" or "M/S benefit." (Doc. No. 10 at 2).

As part of the settlement efforts in the Prior Litigation, the parties entered into (and submitted to the Court) a tolling agreement, wherein the parties agreed to toll the statute of limitations for related claims of healthcare or other welfare benefits. *See UAW v. Textron*, No. 3:98-cv-7524-DAK, Tolling Agreement (N.D. Ohio, June 9, 1999); (Doc. No. 7-4).

Ultimately, the Prior Litigation was resolved through a settlement agreement, which the parties presented to the Court for approval ("Settlement Agreement"). *See UAW v. Textron*, No. 3:98-cv-7524-DAK, Order Approving Settlement, ¶ 1 (N.D. Ohio, June 11, 2001); (Doc. No. 7-5). The parties represented that the Settlement Agreement was "a fair, reasonable and appropriate

---

1. Plaintiffs note that the defendant-pension plans in the Prior Litigation ultimately merged into the Defendant Textron Master Retirement Plan, a defendant here.

2

resolution of all the claims which have been raised or which might have been asserted" in that litigation. (Settlement Agreement, Doc. No. 7-3 at ¶ 6).

The Settlement Agreement contained the following pertinent language:

> ¶6 The parties believe that termination of this litigation is in their best interests in order to achieve certainty of pension benefits and medical coverage, as described herein, and to avoid the time, expense and risk of protracted litigation. The parties and their counsel believe that the settlement set forth in this Settlement Agreement is a fair, reasonable and appropriate resolution of all the claims which have been raised or which might have been asserted in UAW v. Textron by the parties to this Settlement Agreement.
>
> ¶16 This Settlement Agreement settles, compromises and releases any and all claims or causes of action which have been or might have been asserted now or in the future, including any and all claims that have been or might have been asserted in the UAW v. Textron litigation . . . concerning any and all benefits available under the Plans with respect to the M/S Benefit. . . . Notwithstanding the foregoing, nothing in this Settlement Agreement shall affect any right to payment from the Plans independent of any right to coverage with respect to the M/S Benefit.

(*Id*. at ¶¶ 6, 16). The Settlement Agreement also contained a broad integration clause, stating that "[t]he entire agreement of the parties is set forth herein. Apart from the context of this document, and its attachments, there are no other agreements, undertakings, or considerations by or between the parties." (*Id*. at ¶ 19).

### III. Standard of Review

Regarding Defendants' request to dismiss under Rule 12(b)(6), a court's consideration of a motion to dismiss under this rule is limited to the pleadings, and reference outside the pleadings may convert the motion into one for summary judgment. *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008). However, "when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007). Such documents include public records that are not attached to the pleadings.

*Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008); *see also Goryoka v. Quicken Loan*, Inc., 519 F. App'x 926, 927 (6th Cir. 2013) ("Matters of public record may be considered on a motion to dismiss.").

Because documents, other than public records, have been filed by both parties, and those documents have been reviewed and considered by the Court, the motion to dismiss pursuant to Rule 12(b)(6) will be construed as a motion for summary judgment. *Jones*, 521 F.3d at 562.

Summary judgment is proper where "there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting a genuine issue of material fact must support the argument either by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). A court views the facts in the record and reasonable inferences which can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A court does not weigh the evidence or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The party requesting summary judgment bears an initial burden of demonstrating that no genuine issue of material fact exists, which the party must discharge by producing evidence to demonstrate the absence of a genuine issue of material fact or "by showing . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986) (internal quotation marks omitted). If the moving party satisfies this burden, the nonmoving party "may not rest upon its . . . pleadings, but rather must set forth specific facts

showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (citing Rule 56 and *Matsushita*, 475 U.S. at 586). The party opposing the summary judgment motion must present sufficient probative evidence supporting its claim that disputes over material facts remain; evidence which is "merely colorable" or "not significantly probative" is insufficient. *Anderson*, 477 U.S. at 248-52.

## IV. Discussion

Defendants argue that the principles of res judicata and the prior Settlement Agreement bar Plaintiffs' claims. Specifically, Defendants cite *Sherman v. Ludington*, No. 91-3936, 1992 U.S. App. LEXIS 16246, at *8 (6th Cir. July 7, 1992), and claim that because the Prior Litigation "involved a federal claim and resulted in a federal judgment," federal res judicata principles apply. (Doc. No. 7-1 at 7). In the alternative, they argue the Settlement Agreement precludes Plaintiffs claims. Plaintiffs argue the preclusive intent of the parties according to the Settlement Agreement controls based on *Norfolk Southern Corp. v. Chevron, U.S.A., Inc.*, 371 F.3d 1285 (10th Cir. 2004), and their claims are not barred because they were independent from the Prior Litigation.

The Court finds preclusion in the instant case rests upon in the intent of the parties according to the Settlement Agreement, as opposed to strict federal res judicata principles. Here, unlike *Sherman* and the cases cited therein, the Court is faced with a consent judgment approving a voluntary dismissal. To be clear, "[a] voluntary dismissal with prejudice operates as a final adjudication on the merits and has a res judicata effect." *Warfield v. Allied Signal TBS Holdings, Inc.*, 267 F.3d 538, 542 (6th Cir. 2001); *see also American Greetings, Corp. v. Cookie Jar Entm't, Inc.*, No. 1:09-cv-1056, 2009 U.S. Dist. LEXIS 102472, at *30-31 (N.D. Ohio Nov. 3, 2009). However, determining preclusion according to the terms of the Settlement Agreement is especially

appropriate where, as here, it is clear the parties intended to settle claims that were not reflected in the original pleadings. (*See* Tolling Agreement, Doc. No. 7-4; Settlement Agreement, Doc. No. 7-3). This is also supported by the Court's Orders in the Prior Litigation which contain language explicitly specifying the Settlement Agreement's intended res judicata effect. (*See* Doc. No. 7-5 and Doc. No. 7-6).

Other courts faced with a consent judgment controlled by a settlement agreement also opted to apply the principles of res judicata (in a somewhat modified form) to the matters specified in the settlement agreement, rather than the original complaint. *See, e.g., Norfolk Southern*, 371 F.3d at 1288-89 (it is the intent of the parties that determines the scope of preclusion in context of a consent judgment based on settlement agreement); *Horton v. Metro. Life Ins. Co.*, 459 F.Supp.2d 1246, 1252 (M.D. Fl. 2006) (although a judgment and order approving class action settlement agreement are preclusive, such preclusion is controlled by the settlement agreement). Consequently, the scope of preclusive effect is determined "by the terms of the Settlement Agreement, as interpreted according to traditional principles of contract law." *Norfolk Southern*, 371 F.3d at 1289.

Because settlement agreements are a type of contract, interpretation of the same is governed by state contract law. *See Bamerilease Capital Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir. 1992). The pertinent events in this case occurred in Ohio, and therefore Ohio contract law applies.

Under Ohio law, contractual language is ambiguous "only where its meaning cannot be determined from the four corners of the agreement or where the language is susceptible of two or more reasonable interpretations." *Savedoff v. Access Grp., Inc*., 524 F.3d 754, 763 (6th Cir. 2008)

6

(*citing Covington v. Lucia*, 784 N.E.2d 186, 190 (Ohio 2003)). A court construing a contract attempts to discover and effectuate the intent of the parties, which is presumed to reside in the language chosen by the parties in the agreement. *Graham v. Drydock Coal Co.*, 667 N.E.2d 949, 952 (Ohio 1996). Common words appearing in a written instrument are to be given their plain and ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly intended from the face or overall contents of the instrument. *Alexander v. Buckeye Pipe Line Co.*, 374 N.E.2d 146, 148 (Ohio 1978). "The decision as to whether a contract is ambiguous and thus requires extrinsic evidence to ascertain its meaning is one of law." *Ohio Historical Soc'y v. Gen. Maint. & Eng'g Co.*, 583 N.E.2d 340, 344 (Ohio App. 1989).

Here, the settlement agreement is indeed "susceptible to two . . . reasonable interpretations." *Savedoff*, 524 F.3d at 763. The Settlement Agreement provides, in relevant part, that the parties "settle[d], compromise[d] and release[d] any and all claims or causes of action which have been or *might have been asserted now or in the future*." (Settlement Agreement, Doc. No. 7-3 at ¶ 16) (emphasis added). The last sentence of that same provision, on the other hand, provides, in relevant part, that "nothing in this Settlement Agreement shall affect any right to payment from the Plans *independent* of any right to coverage with respect to the M/S Benefit." (*Id.*) (emphasis added). This ambiguity produces an irrational result, in that, by the terms of the agreement, Plaintiffs may pursue independent claims, but those independent claims could arguably constitute future claims which might have been asserted in the Prior Litigation. Thus, the latter swallows Plaintiffs reserved right to the former. The operative rule of Ohio law is that an ambiguity regarding material terms in a settlement agreement must be resolved, if at all, following an evidentiary hearing. *Rulli v. Fan Co.*, 683 N.E.2d 337, 339 (Ohio 1997). Even so,

"[o]nce ambiguity is determined, the meaning of the words used becomes one of fact." *Ohio Historical Soc'y*, 583 N.E.2d at 344; *see also Younglove v. Const., LLC v. PSD Development, LLC*, No. 3:08CV1447, 2011 WL 646766, at *7 (N.D. Ohio February 16, 2011). Because the Court is faced with a genuine issue of material fact, Defendants' motion cannot be granted.

## IV. Conclusion

Accordingly, Defendants motion is denied. (Doc. No. 7).

IT IS SO ORDERED.

                                        S/ *David A. Katz*
                                        DAVID A. KATZ
                                        U. S. DISTRICT JUDGE